## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| SGT AUTO TRANSPORT CORP. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | Case No. 2026-cv-1056 |
| | ) | |
| NEXUS AT LLC d/b/a | ) | |
| NEXUS AUTO TRANSPORT, | ) | |
| | ) | |
| Defendant. | ) | |

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff, SGT AUTO TRANSPORT CORP. (hereinafter "SGT"), for its Complaint for Injunctive Relief and Damages against defendant, NEXUS AT LLC d/b/a NEXUS Auto Transport (hereinafter "NEXUS"), alleges as follows based on personal knowledge with respect to SGT's own actions and upon information and belief as to all other matters:

## NATURE OF ACTION

1.      For over 10 months, SGT has been the victim of a targeted smear campaign spearheaded by business rival NEXUS. With the help of an online marketing specialist, NEXUS has created thousands of websites that host "toxic backlinks" to SGT's website, sgtautotransport.com. These toxic backlinks are hosted on websites that entice people looking for unsavory and often unlawful goods and services. For example, someone looking to purchase steroids may come across one of these websites and click on a link that says, "drug paraphernalia" only to be redirected to SGT's website for car-shipping services. These misleading links not only confuse consumers about SGT's relationship with the services advertised on NEXUS's scam websites, but they also damage SGT's ranking on Google's search algorithm. As a result, SGT

loses valuable customer goodwill, receives a tarnished brand image, and misses out on crucial website traffic from people interested in SGT's car-shipping services.

2.     NEXUS's unlawful behavior was revealed to SGT by a former high-ranking NEXUS employee with firsthand knowledge of NEXUS's conduct. This former employee, Rados Stefanovic, observed multiple instances in which NEXUS's CEO instructed an independent contractor to post the toxic backlinks. After leaving NEXUS in July 2025, Mr. Stefanovic divulged that NEXUS's CEO, Gokhan Arkin, had concocted the toxic-backlink campaign with the intent of harming NEXUS's competitors, including SGT, so that NEXUS could gain unlawful competitive advantage. Mr. Stefanovic further divulged that prior to the targeted toxic backlink campaign, NEXUS was scraping competitors' websites (i.e., downloading their data) with their calculators to be able to offer lower quotes to NEXUS customers and NEXUS was creating fake accounts to access competitors' platforms and steal their data.

3.     Nexus undertook the same or similar action of posting toxic backlinks, against Montway LLC d/b/a Montway Auto Transport (hereinafter "Montway").  On October 17, 2025, Montway filed a Complaint against NEXUS alleging, as SGT has alleged here, that it has been the victim of a smear campaign spearheaded by NEXUS in which NEXUS has created thousands of websites that host "toxic backlinks" to Montway's website. See *Montway LLC d/b/a/ Montway Auto Transport v. Nexus AT LLC d/b/a Nexus Auto Transport,* Case No. 25-cv-13100, pending in the United States District Court for the Northern District of Illinois, Eastern Division (Doc. # 1) ("the Montway Lawsuit").

4.     On October 28, 2025, Montway filed a Motion for a Temporary Restraining Order and Preliminary Injunction (Case No. 25-cv-13100; Doc. # 9). On October 31, 2025, this Court granted, in part, Montway's motion for temporary restraining order ("TRO") (*Id*.; Doc. ## 18 and

19). On November 5, 2025, Nexus filed an Opposition to [Montway's] Motion for a Temporary Restraining Order and Preliminary Injunction (*Id.*; Doc. # 25). On November 10, 2025, this Court set a preliminary injunction hearing for November 24, 2025 (*Id.*; Doc. # 29).

5.     On or about November 21, 2025, NEXUS advised Montway that NEXUS ***agreed*** to the entry of a preliminary injunction on the same terms as the TRO. On November 24, 2025, the day of the preliminary injunction hearing, NEXUS filed a Motion to Withdraw Opposition to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Case No. 2025-cv-13100; Doc. # 42). Notwithstanding the Motion to Withdraw Opposition, the Court proceeded with the hearing. The only witness to testify was Rados Stefanovic, who appeared from Serbia via video transmission. Following the hearing, the Court entered a Preliminary Injunction against NEXUS (*Id.*; Doc. # 44). The Order stated that "the Court heard unrebutted testimony from Rados Stefanovic, who testified remotely via videoconference that Defendant was responsible for posting toxic backlinks to Plaintiff's website."    (*Id.*; Doc. # 44, Page 1 of 4). In granting the Order, the Court further stated that it found Mr. Stefanovic's testimony "credible based on the record before the Court, and Defendant's withdrawal of its opposition to Plaintiff's Motion for a Preliminary Injunction." (*Id.*; Doc. # 44, Page 2 of 4). The Order provides, inter alia, that NEXUS is prohibited from posting, publishing and/or generating further backlinks to Montway's website; NEXUS is prohibited from using "MONTWAY" and "MONTAWY AUTO TRANSPORT" or any of Montway's common law marks and trade name; and NEXUS shall permanently remove any backlinks to Montway's website. (*Id.*; Doc. # 44, Page 2 of 4). In addition, the Court ordered that no later than December 8, 2025, NEXUS shall file a status report attesting to all steps taken to comply with the Order. (*Id.*; Doc. # 44, Page 3 of 4).

6.      On December 1, 2025, counsel for NEXUS filed a motion to withdraw citing "irreconcilable differences" resulting in a "complete breakdown in communication" making "continued representation untenable." (Case No. 2025-cv-13100; Doc. # 48).  On December 3, 2025, the Court granted counsel's Motion to Withdraw, advising NEXUS that it may only appear via counsel and if an appearance of counsel is not filed within 30 days (of December 3, 2025), NEXUS will be held in default. (*Id.*).

7.      NEXUS did not file the status report due by December 8, 2025, attesting to all steps taken to comply with the Preliminary Injunction Order.

8.      On December 11, 2025, Montway filed an Amended Complaint adding NEXUS CEO Gokhan Arkin as a defendant and adding a claim for individual liability under the Illinois LLC Act. (Case No. 25-cv-13100, Amended Complaint, Doc # 50).

9.      Attached as Exhibit 3 to Montway's Amended Complaint, is a backlink profile for SGT, evidencing that SGT experienced similar toxic backlinks to Montway from April through October, 2025. (*Id.*; Doc # 50, P. 13 of 37). SGT continues to experience toxic backlinks.

10.      Since the entry of the Preliminary Injunction in the Montway Lawsuit, the high volume of backlinks to Montway's website have stopped and have been removed; however, there is still a "slow, but steady influx of toxic backlinks to Montway's and SGT's websites containing characteristics of the toxic backlinks to which Mr. Stefanovic testified . . ." (*Id.*; Doc # 50, P.  21 of 37).

11.       SGT brings this action to stop NEXUS's continued egregious violations of the Lanham Act (15 U.S.C. § 1051 et seq.) and state laws regarding unfair competition.

## PARTIES

12.     SGT is a corporation organized and existing under the laws of the State of New York, having its principal place of business in Bohemia, New York.

13.     NEXUS AT LLC is a limited liability company organized and existing under the laws of the State of Illinois having its principal place of business in Schaumburg, Illinois.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and the Lanham Act (15 U.S.C. § 1051 et seq.). This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because the federal and state law claims derive from a common nucleus of operative facts.

15.     Venue is proper in this Court under 28 U.S.C. § 1391 because NEXUS has its principal place of business in Schaumburg, Illinois, and, upon information and belief, its member(s) reside(s) within the Northern District of Illinois.

## FACTUAL ALLEGATIONS.

A.     **SGT's Business and Trademark Rights.**

16.     Since its organization in 2014, SGT has worked hard and invested substantially to become one of the top automotive transportation brokers in the United States.

17.     SGT protects its brand through its trademark consisting of common law and federally registered rights to the trademark "SGT AUTO TRANSPORT" (the "SGT Mark"). The SGT Mark ensures that its customers identify SGT as the origin of its automobile transport services and that SGT can capitalize on its customer goodwill. SGT owns U.S. Reg. No. 8,055,297 which is a standard character, service mark registration for use of the SGT Mark in connection with car transport services. Based on that use, the SGT Mark has acquired consumer

recognition, positive reputation, and extensive goodwill with consumers. Currently, SGT uses the SGT Mark in several capacities, including in its domain name: "sgtautotransport.com." A true and accurate copy of U.S. Reg. No. 8,055,297 is attached hereto as Exhibit 1.

18.     Over the years, SGT has created invaluable partnerships and relationships which have allowed SGT to grow and maintain its customer base. SGT's dedication to the automotive shipping industry and substantial brand investment are evident in its reputation— SGT has an average overall customer rating of 4.7 out of 5 stars. This reputation enabled SGT to thrive, affording SGT numerous recognitions, including a shout out by Forbes in July 2025, which described SGT as "a leader with competitive prices, good customer reviews and responsive customer service."

19.     SGT has become synonymous with core values of integrity, service excellence, leadership, innovation, and simplicity in operations. SGT strives to provide a 5-star vehicle shipping service, brokering the safe and prompt shipment of vehicles while offering excellent customer service. SGT provides automotive transportation services to a diverse range of clients, including individual car owners, auto dealerships, financial institutions (for vehicle repossession), rental car companies, OEMs (original equipment manufacturers), and others seeking automotive transportation solutions.

20.     SGT's stellar reputation is key to its ongoing success, and so SGT has taken great effort to ensure that it protects and builds its brand. To that end, SGT authorizes only those with positive reputations to be affiliates that can display SGT's marks in connection with SGT's business.

21.     SGT's substantial investment to secure partnerships with trustworthy affiliates is central to its efforts to build its reputation with its customers as a trustworthy and dependable source of automobile transport services.

22.     SGT's efforts to build a strong online presence—something essential in its line of business—also draw upon SGT's reputation for trustworthiness and its partnerships with trustworthy affiliates.  SGT spends hundreds of thousands of dollars each year on online advertising, search-engine optimization ("SEO"), and affiliate marketing to ensure that it continues to reach prospective clients.

23.     SEO is a particularly important tool for SGT. SEO is the practice of using various techniques to improve a website's "rank" on search engines like Google or Bing. SEO improves a website's organic web-traffic by ensuring that the website ranks highly when a user searches for information relevant to that website. For example, "sgtautotransport.com" is not only one of the first websites that Google returns when a user searches for "SGT " or "SGT Auto Transport," but is also a top website for generic searches, like "best car shipping company" (https://www.google.com/search?g=best+car+shipping+company) or "how to ship a car to another state" https://www.google.com/search?q=how+to+ship+a+car+to+anotber+state).

24.     SGT's SEO techniques have developed organically as SGT grows its business. Because SGT aims to provide reliable, trustworthy, and dependable transportation services, its website reflects those efforts. According to Google, posting "reliable and helpful" content improves a website's SEO ranking. (https://developers.google.com/search/docs/fundamentals/seo-starter-guide#make-your-site-interesting.) Accordingly, SGT's successful efforts to maintain reliable, trustworthy and dependable services translate directly through its SEO techniques to enhance its website's SEO ranking.

25.     Not coincidentally, Google measures this "trustworthiness" by measuring "backlinks." Backlinks are when links for a given website---here, "sgtautotrans.com"-appear on other websites (https://www.semrush.com/blog/what-are-backlinksD). Having high quality and quantity backlinks are associated with a high SEO ranking. Whereas "toxic" backlinks are a "negative" SEO tactic that causes measurable harm to a company's search rank, website traffic, and customer acquisition. Indeed, of the 20 factors that correlate with high SEO rankings, 8 factors are related to backlinks (See *Id*.).

26.     A website's SEO ranking is vital to website traffic and brand awareness. According to statistics gathered by an industry leader on SEO, Semrush.com, the first ranked website on a Google search is responsible for nearly a quarter of all website "clicks" for that given search Qittps://www.semrush.com/blog/seo-rankingD. And being first-ranked

website generates roughly ten times more web traffic than the tenth-ranked website:



27.    Whereas ranking highly on a search engine is crucial for generating web traffic and potential customer leads, landing on the second page of a search engine means that the website is practically invisible. Some statistics suggest that fewer than 1% of all users click on the results on the second page of Google search results. (https://protofuse.com/articles/first-page-of-google/.)

28.    SGT's substantial investment and SEO strategy have paid off, as the vast majority of SGT's individual customers first heard about SGT through some digital marketing technique.

**B.    NEXUS's Unfair Competition and Unauthorized Use of the SGT Mark.**

29.    NEXUS is an automotive transport company and one of SGT's major direct competitors.  Last year, NEXUS's CEO, George Arkin, decided he wanted to launch a toxic-backlink campaign to damage SGT and Montway. To effectuate this campaign, NEXUS retained

an individual named Vishal Parmar, who lives and works in India as an SEO strategist for "MindInventory." A copy of Mr. Parmar's LinkedIn page is attached hereto as Exhibit 2.

30.     Mr. Parmar, at NEXUS's direction, has engaged in the practice known as "toxic backlinking" of SGT's website, as well as of Montway's website, as alleged in the Montway Lawsuit. Whereas backlinking to strong and trustworthy websites can, as described above, boost a website's SEO ranking, toxic backlinking is the practice of using backlinks to harm a website's SEO ranking. The presence of flow-quality backlinks causes search-engine algorithms to rank an otherwise trustworthy website lower than if the website were missing those backlinks. This is due, in part, to how search algorithms work. Google, for example, gathers information about a webpage within an "index," and then uses that index to return the "highest quality and most relevant" webpages in response to a given query. (https://developers.google.com/search/docs/fundamentals/how-search-works.) When backlinks to a webpage appear on spam-filled, untrustworthy websites, the backlinked webpage becomes associated with content unrelated to that page's main content. A webpage that is the victim of toxic backlinks will thus show up in the search engine's index as having a lower proportion of "relevant" content than its peers that lack such backlinks. To this end, NEXUS's toxic backlink campaign against SGT has involved adding links to "sgtautotransport.com" on untrustworthy websites.

31.     Another toxic-backlinking technique involves using misleading "anchor text" to link to a website. "Anchor text" is the clickable text that appears on screen when text is hyperlinked. As above with spam-filled websites, using misleading anchor text as part of a toxic-backlink campaign confuses search-engine algorithms by associating the target webpage with different, sometimes malicious and wholly unrelated content.

32.     Toxic backlinking also violates Google's terms and conditions, as toxic backlinks may appear as "link spam," which Google defines as "the practice of creating links to or from a site primarily for the purpose of manipulating search rankings" (https://developers.google.com/search/docs/essentials/spam-policies#link-spam).     If Google detects link spam, it can result in the website appearing lower in the rankings or being delisted from Google entirely. *(See id.)* A toxic-backlink campaign can leverage Google's link-spam policy by creating many backlinks that have anchor text associated with frequently used search terms. These backlinks appear to Google's algorithm as "over optimized"-i.e., intentionally designed to generate clicks, thereby manipulating search rankings in violation of Google's link-spam policy. (https://www.alliai.com/seo-ranking-factors/poison-anchor-text).     One common approach for creating overly optimized anchor text is to use keywords associated with purchasing decisions (e.g., "car insurance quote").     (https://aioseo.com/what-is-anchor-text-and-how-does-it-impact-seo/#aioseo-backlinks-and-money-anchors.) Keywords related to online gambling and "adult content" are also frequently used as anchor text in a toxic-backlink attack. (https://www.digivate.com/blog/seo/seo-warfare-attack-defence/.)

33.     SGT actively monitors toxic backlinks to its website. SGT observed a drastic rise in toxic backlinks beginning in July 2024. From July 27, 2024, to December 4, 2025, SGT detected 1,899 backlinks considered to be "toxic" because said backlinks were on untrustworthy, spam-filled websites and were not authorized by SGT.

34.     Attached hereto as Exhibit 3 is a summary of the toxic backlinks that SGT detected from July 27, 2024, through December 4, 2025. Some backlinks use "sgtautotransport.com" as anchor text on websites like pokerstarcasinolives.com. Other toxic backlinks use anchor text such as "online casino," "hiding illegal funds," "CBD products online," "escort girls in Chicago,"

"buying sex toys," "illegal border crossing," "illegal drug distribution," "corrupt influence," "drug paraphernalia" and "heroin is a drug." This means that an individual who clicks on the link believing, for instance, he or she is about to purchase CBD products or sex toys is then to be redirected to SGT's website, creating the false impression that SGT is connected to and/or affiliated with such products or services.

35.    The unauthorized affiliation between SGT's website and unlawful activity on spam-filled, untrustworthy websites directly harms SGT's trustworthiness and thereby SEO rank. (https://developers.google.com/search/docs/fundamentals/how-search-works#serving)

36.    NEXUS, through Mr. Parmar, is carrying out its toxic backlinking campaign with the intent of damaging SGT's goodwill and brand impact. Specifically, the toxic backlinks have used the SGT Mark by linking to "sgtautotransport.com" and/or using "SGT AUTO TRANSPORT" as anchor text on untrustworthy and spam-filled websites. Likewise, NEXUS has linked to SGT's website using misleading anchor text. The anchor text is literally false because it represents that the link provides goods and/or services that SGT does not offer. The toxic backlinks have caused consumer confusion by creating the impression that SGT's services are affiliated with untrustworthy, spam-filled websites and/or the service advertised therein, rather than with the trustworthy services normally associated with the SGT Mark.

37.    In the short period of time since the campaign of toxic backlinking began, SGT's SEO ranking has dropped, reducing the number of "clicks" on SGT's website and therefore potential customers. Beginning in or around mid-2025, SGT began seeing a noticeable decline in year-over-year ("YoY") clicks on its website. This decline coincides with when Google began updating its algorithms. As illustrated below, SGT's "YoY" declined sharply in or around July 28, 2024, shortly after Google began to roll out its spam-algorithm update. SGT estimates that it has

suffered a 40,000 organic traffic loss (visitors who find a website through unpaid search results, like Google or Bing) as a result of negative backlinks.

38.     Upon information and belief, NEXUS, as part of a deliberate toxic backlinking campaign, is the party that caused the vast majority, if not all, of the toxic backlinks that appear in Exhibit "3" which has resulted in a substantial likelihood of consumer confusion and a drop in SGT's SEO rank.  SGT learned about the origin of the toxic-backlink campaign after discussions with one of NEXUS's former managers, Rados Stefanovic, who informed  SGT executives that NEXUS was conducting this campaign against its competitors, including SGT and Montway, and admitted to SGT that NEXUS was behind it.  Mr. Stefanovic explained that Mr. Arkin specifically asked Mr. Parmar to launch a toxic backlink campaign against NEXUS's competitors to damage their websites. Mr. Stefanovic was present at multiple meetings with Mr. Arkin and Mr. Parmar during which toxic backlinks were discussed. Mr. Stefanovic also personally saw a document that listed the websites that NEXUS used for the toxic backlinks. Mr. Stefanovic also advised SGT that NEXUS was scraping SGT's website to obtain pricing information to be able to offer lower quotes to NEXUS customers than offered by SGT.

39.     Mr. Stefanovic advised that it was NEXUS' intent to damage and harm SGT and other NEXUS competitors. At all times, NEXUS's deliberate backlinking campaign was carried out with the intent of causing consumer confusion tying the SGT Mark with untrustworthy and spam-filled websites, and damaging SGT's goodwill and brand impact. NEXUS's toxic backlinking campaign against SGT uses false statements of fact with the goal of causing commercial harm to SGT by lowering SGT's search rank.

40.     As was disclosed to the Court on November 24, 2025, during the Injunction hearing on the Montway Lawsuit, Mr. Stefanovic is under constant attack by defendant NEXUS. At the

time of that hearing, Mr. Stefanovic, who is being sued both civilly and criminally by NEXUS in Serbia in regard to a loan given to him by NEXUS CEO Arkin to buy a house which Mr. Arkin unilaterally accelerated after Mr. Stefanovic resigned from NEXUS, feared for his safety and did not wish to be involved in the Montway Lawsuit any longer. NEXUS also alleges that Mr. Stefanovic stole one or more company computers after he resigned even though Mr. Stevanovic tried to return the computers to NEXUS. It is believed that Mr. Stefanovic continues to fear for his safety at this time.

## FIRST CAUSE OF ACTION

### False Advertising Under 15 U.S.C. § 1125(a)

41.     SGT repeats and re-alleges the allegations of paragraphs 1 through 40,as if fully set forth herein.

42.     SGT has marketed its services under its distinctive "SGT AUTO TRANSPORT" mark since 2014 and has thus acquired common law rights in and built up a significant amount of goodwill associated with, the "SGT AUTO TRANSPORT" mark.

43.     Additionally, the "SGT AUTO TRANSPORT" mark is federally registered and inherently distinctive.

44.     Through NEXUS's toxic backlinking campaign, NEXUS has used the "SGT AUTO TRANSPORT" mark without SGT's authorization by placing "sgtautotransport.com" "SGT AUTO TRANSPORT" on untrustworthy and spam-filled websites.

45.     NEXUS's use of the "SGT AUTO TRANSPORT" mark in its toxic backlinking campaign has caused a likelihood of confusion, and will continue to do so, as to the origin, sponsorship, or approval of the products or services offered by SGT in violation of 15 U.S.C. § 1125(a).

46.     NEXUS has used the "SGT AUTO TRANSPORT" mark in commercial advertising in a way that misrepresents the nature, characteristics, qualities, or geographic origin of SGT's services and/or commercial activities.

47.     NEXUS has deliberately persisted in its infringing use of the "SGT AUTO TRANSPORT" mark. NEXUS's infringement and violation of 15 U.S.C. § 1125(a) is willful, making this an exceptional case under 15 U.S.C. § 1117.

48.     NEXUS, by way of its infringing use of the "SGT AUTO TRANSPORT" mark, has caused and continues to cause SGT to suffer damages in an amount to be determined at trial and has caused and is causing SGT irreparable harm in the form of at least lost market share and loss of goodwill. SGT has no adequate remedy at law against NEXUS's acts, and its damages are incalculable. Unless NEXUS is enjoined from using the "SGT AUTO TRANSPORT" mark, SGT will continue to suffer irreparable harm.

49.     NEXUS's infringing use of the "SGT AUTO TRANSPORT" mark has allowed NEXUS to avoid substantial business-development costs to secure market share from SGT, thereby causing NEXUS to be unjustly enriched.

## SECOND CAUSE OF ACTION

### Violation of the Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510/1 et seq)

50.     SGT repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

51.     This Second Cause of Action is brought pursuant to the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510 et seq., which states at § 2:

A person engages in a deceptive trade practice when, in the course of his business, vocation or occupation, he:

15

1) passes off goods or services as those of another;

2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

3) causes likelihood of confusion or of misunderstanding as to affiliation, connection or association with or certification by another;

4) uses deceptive representations or designations of geographic origin in connection with goods or services;

5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have.

52.     SGT owns the trademark and trade name rights in "SGT AUTO TRANSPORT" given SGT's use of that trademark in connection to its services since at least July 2014.

53.     Through NEXUS's toxic backlinking campaign, NEXUS has used SGT's trademark and trade name without SGT's authorization by placing "sgtautotransport.com" on untrustworthy and spam-filled websites.

54.     NEXUS's use of SGT's trademarks and trade name has caused a likelihood of confusion and/or of misunderstanding as to source, sponsorship, approval or certification of goods or services, in violation of 815 ILCS 510/2 (2).

55.     NEXUS's use of SGT's trademarks and trade name has caused a likelihood of confusion and/or misunderstanding as to affiliation, connection, or association with or certification by SGT of the websites, website owners, and/or the services offered on the websites containing the toxic backlinks, in violation of 815 ILCS 510/2 (3).

56.     NEXUS's use of SGT's trademarks and trade name has represented that SGT's services have a sponsorship or approval, which they do not have in violation of 815 ILCS 510/2 (5).

57.     NEXUS's use of SGT's trademarks and trade name has represented that SGT's services have a sponsorship, approval, affiliation or connection with the websites, website owners, and/or the services offered on the websites containing the toxic backlinks which they do not have, in violation of 815 ILCS 510/2 (5)

58.     NEXUS's toxic backlinking campaign has also disparaged SGT's services by associating SGT with untrustworthy and spam-filled websites.

59.     NEXUS's unlawful conduct described in the preceding paragraphs has been willful.

60.     NEXUS, by way of its unauthorized use of the SGT's trademark(s) and trade name, has caused and continues to cause SGT to suffer damages in an amount to be determined at trial and has caused and is causing SGT irreparable harm in the form of at least lost market share and loss of goodwill. SGT has no adequate remedy at law against NEXUS's acts of infringement, and, unless NEXUS is enjoined from using SGT's trademark(s) and trade name, SGT will continue to suffer irreparable harm.

61.     NEXUS's conduct has allowed NEXUS to capture market share relative to SGT without requiring commensurate business expenses, thereby leading NEXUS to be unjustly enriched.

## THIRD CAUSE OF ACTION

### Violation of the Consumer Fraud and Deceptive Business Practices Act - 815 ILCS 505

62.     SGT repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

63.     The Consumer Fraud and Deceptive Business Practices Act states in pertinent part:

> *Sec. 2.* Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to... the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act," ... in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

64. Since at least July 2024, NEXUS's unlawful conduct described in the preceding paragraphs has been intentional, deliberate, and willful. NEXUS knew that it acted unlawfully when NEXUS used SGT's trademark(s) and trade name without SGT's authorization and placed "sgtautotransport.com" on untrustworthy and spam-filled websites to create toxic backlinks.

65. Punitive damages should be awarded in order to punish and deter the unlawful conduct alleged herein.

## **FOURTH CAUSE OF ACTION**

### **Unfair Competition in Violation of Cal. Bus. & Prof. Code§ 17200**

66. SGT repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

67. Cal. Bus. & Prof. Code § 17200 defines "unfair competition" to include "any unlawful, unfair or fraudulent business act or practice" and any "unfair, deceptive, untrue or misleading advertising."

68. As described above, NEXUS has engaged in a toxic backlinking campaign to damage SGT's goodwill and, in particular, SGT's SEO rank.

69. NEXUS's toxic backlinking campaign unfairly and deceptively associates SGT and SGT's website with untrustworthy and spam-filled websites.

70. NEXUS's toxic backlinking campaign has caused SGT's SEO rank to drop throughout the United States.

71. NEXUS's toxic backlinking campaign has also harmed SGT's relationship with Google, a California-based company and the world's largest market share by an overwhelming margin. NEXUS's toxic backlinking campaign against SGT threatens misleading Google into flagging SGT and its website for violating Google's content policies, thereby risking that SGT's website will be removed from Google entirely.

72. NEXUS, because of its toxic backlinking campaign, has caused and continues to cause SGT to suffer damages in an amount to be determined at trial, and has caused and is causing SGT irreparable harm in the form of at least lost market share and loss of goodwill. SGT has no adequate remedy at law against NEXUS, and, unless NEXUS is enjoined from its toxic backlinking campaign, SGT will continue to suffer irreparable harm.

73. NEXUS's conduct has allowed NEXUS to capture market share relative to SGT without requiring commensurate business expenses, thereby leading NEXUS to be unjustly enriched.

## **FIFTH CAUSE OF ACTION**

### **Federal Trademark Infringement Under 15 U.S.C. § 1114(1)**

74. SGT repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

75. SGT has marketed its services under its distinctive "SGT AUTO TRANSPORT" trademark and trade name  since 2014 and thus has built up a significant amount of goodwill associated with the "SGT AUTO TRANSPORT" mark.

76. NEXUS has never sought or obtained the consent of SGT to use the "SGT AUTO TRANSPORT" mark, nor has SGT approved any of NEXUS's use of the "SGT AUTO TRANSPORT" mark.

77. Through NEXUS's toxic backlinking campaign, NEXUS has used the "SGT AUTO TRANSPORT" mark without SGT's authorization by placing "sgtautotransport.com" and on untrustworthy and spam-filled websites.

78. NEXUS's use of the "SGT AUTO TRANSPORT" mark in connection with its toxic backlinking campaign is likely to cause confusion, mistake and deception, and will continue to do so, as to the source, origin, affiliation, or sponsorship, or approval by SGT of the websites, website owners, and/or the services offered on the websites containing the toxic backlinks and will injure and damage SGT and the goodwill and reputation symbolized by the "SGT" mark, in violation of 15 U.S.C. § 1114.

79. NEXUS's use of the "SGT AUTO TRANSPORT" mark in connection with its toxic backlinking campaign is likely to cause confusion, mistake and deception, and will continue to do so, as to the source, origin, affiliation, or sponsorship, or approval by SGT of the websites, website owners, and/or the services offered on the websites containing the toxic backlinks and will injure and damage SGT and the goodwill and reputation symbolized by the "SGT AUTO TRANSPORT" mark, in violation of 15 U.S.C. § 1114.

80. NEXUS has deliberately persisted in its infringing use of the "SGT AUTO TRANSPORT" mark despite its knowledge of SGT's rights in the "SGT AUTO TRANSPORT" mark. NEXUS's infringement and violation of 15 U.S.C. § 1114 is willful, making this an exceptional case under 15 U.S.C. § 1117.

81.     NEXUS, by way of its infringing use of the "SGT AUTO TRANSPORT" mark, has caused and continues to cause SGT to suffer damages in an amount to be determined at trial and has caused and is causing SGT irreparable harm in the form of at least lost market share and loss of goodwill. SGT has no adequate remedy at law against NEXUS's acts of infringement, and, unless NEXUS is enjoined from using the "SGT AUTO TRANSPORT" mark, SGT will continue to suffer irreparable harm.

82.     NEXUS's infringing use of the "SGT AUTO TRANSPORT" mark has allowed NEXUS to avoid substantial business-development costs to secure market share from SGT.

83.     NEXUS's use of the "SGT AUTO TRANSPORT" mark amounts to counterfeiting, thereby entitling SGT to treble damages and/or the election of statutory damages. 15 U.S.C. § 1117.

## SIXTH CAUSE OF ACTION

## Dilution by Tarnishment in Violation of 15 U.S.C. § 1125(c)

84.     SGT repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

85.     SGT has marketed its services under its distinctive "SGT AUTO TRANSPORT" trademark and trade name since 2014 and thus has built up a significant amount of goodwill associated with the "SGT AUTO TRANSPORT" mark.

86.     SGT's "SGT AUTO TRANSPORT" trademark and trade name are used nationwide in connection with SGT's services and are thus affiliated with the nation's top car-shipping companies in the United States.

87.     SGT's "SGT AUTO TRANSPORT" trademark and trade name qualify as "famous marks" within the meaning of 15 U.S.C. § 1125.

21

88.     NEXUS has never sought or obtained the consent of SGT to use the "SGT AUTO TRANSPORT" mark, nor has SGT approved any of NEXUS's use of the "SGT AUTO TRANSPORT" mark.

89.     Nonetheless, NEXUS has repeatedly used SGT "SGT AUTO TRANSPORT" trademark and trade name in connection with the advertising of goods and services that are illegal and/or have a negative connotation or reputation, including, upon information and belief, like "online casino," "CBD products online," "hiding illegal funds," "illegal border crossing," "escort girls in Chicago," "buying sex toys," "drug paraphernalia" and "heroin is a drug" *(See* Ex. 3.)

90.     NEXUS, by way of its unauthorized use of the SGT's trademark and trade name has caused and continues to cause SGT to suffer damages in an amount to be determined at trial and has caused and is causing SGT irreparable harm in the form of at least lost market share, loss of goodwill, and harm to the reputation of SGT's trademark and trade name.  SGT has no adequate remedy at law against NEXUS's acts of infringement, and, unless NEXUS is enjoined from using SGT's trademark(s) and trade name, SGT will continue to suffer irreparable harm.

## SEVENTH CAUSE OF ACTION

### Injunctive Relief

91.     SGT repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

92.     By virtue of the foregoing, SGT has demonstrated a likelihood of success on the merits and that a balancing of the equities favors the issuance of an injunction against NEXUS.

93.     Unless NEXUS is temporarily, preliminarily, and/or permanently enjoined from engaging in its toxic-backlinking campaign, SGT will continue to be irreparably harmed by the:

a. Loss of market share due to the decline in SEO rank and thereby web traffic to SGT's website.

b. Loss of customer goodwill due to the unauthorized use of SGT's trademark and trade name.

c. Association between the services being advertised in connection with SGT's trademark and trade name.

94.     Present economic loss is estimated to be in excess of $1,000,000.00 and continuing;  future economic loss is presently incalculable.

95.     SGT is entitled to a temporary, preliminary, and permanent injunctive relief, enjoining and restraining NEXUS from engaging in its toxic backlinking campaign against SGT.

96.     A temporary restraining order is particularly necessary because, unless NEXUS is immediately compelled to stop, SGT faces extreme hardship and potential de-platforming from Google.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff SGT prays for the following relief:

A.  A judgment that NEXUS's use of the "SGT " and "SGT AUTO TRANSPORT" marks infringes and has infringed SGT's rights in violation of 15 U.S.C. § 1114;

B.  A judgment that NEXUS's use of the "SGT " and "SGT AUTO TRANSPORT" infringes and has infringed SGT's rights in violation of 15 U.S.C. § 1125(a);

C.  A judgment that NEXUS's conduct violates the Uniform Deceptive Trade Practices Act, 815 ILCS 510;

D.  A judgment that NEXUS's conduct violates the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505;

E.  A judgment that NEXUS's conduct violates Cal. Bus. & Prof. Code§ 17200;

F.  A temporary restraining order that prohibits NEXUS and its officers, directors, agents, servants, employees, affiliates, divisions, branches, subsidiaries, parents, and all others acting in concert or privity with or for any of them from posting backlinks of any kind to SGT's website and/or any subdomains therein;

G.  An order preliminarily and permanently enjoining NEXUS and its officers, directors, agents, servants, employees, affiliates, divisions, branches, subsidiaries, parents, and all others acting in concert or privity with or for any of them from using the "SGT AUTO TRANSPORT" or any of SGT's common law marks and trade name, or any colorable form thereof, in connection with vehicle transportation services;

H.  An order preliminarily and permanently enjoining NEXUS and its officers, directors, agents, servants, employees, affiliates, divisions, branches, subsidiaries, parents, and all others acting in concert or privity with or for any of them from posting backlinks of any kind to SGT's website and/or any subdomains therein;

I.  An order requiring NEXUS and its officers, directors, agents, servants, employees, affiliates, divisions, branches, subsidiaries, parents, and all others acting in concert or privity with or for any of them to delete or remove any toxic backlinks to SGT's website and/or any subdomains therein that were created by NEXUS or at its behest;

24

J.  An order, in accordance with 15 U.S.C. § 1116, requiring NEXUS to file with this Court and serve upon SGT, within thirty (30) days after entry of the permanent injunction, a report in writing and under oath, setting forth in detail the manner and form in which NEXUS has complied with the permanent injunction;

K.  An order, pursuant to 15 U.S.C. § 1118, requiring that NEXUS deletes any and all electronic uses of "SGT AUTO TRANSPORT" under NEXUS's control or authorization, including on electronic information, computer files, and/or websites;

L.  An award of damages to SGT to which it is entitled under 15 U.S.C. § 1117 and/or for NEXUS's past infringement and false advertising, and any continuing or future infringement and false advertising, up until the date NEXUS is finally and permanently enjoined as described herein, including compensatory damages, exemplary, and/or statutory damages;

M.  An award of damages to SGT to which it is entitled under 815 ILCS 505;

N.  An award of punitive damages in an amount sufficient to punish and deter the conduct engaged in by NEXUS;

O.  An award of restitution and/or other equitable monetary relief to SGT for NEXUS's unjust enrichment.

P.  An award to SGT of pre- and post-judgment interest on its damages;

Q.  An award to SGT of treble and/or enhanced damages under 15 U.S.C. § 1117 and any other applicable statutes or law for Defendant's willful and intentional infringement;

R.  A declaration that this case is exceptional and an award to SGT of its reasonable costs and expenses in this action, including reasonable attorneys' fees under 15 U.S.C. § 1117, and any other applicable statutes or laws, including interest; and

S.  An award to SGT of such other and further relief as this Court may deem just and proper.

### **DEMAND FOR JURY TRIAL**

SGT hereby respectfully requests trial by jury under Rule 38 of the Federal Rules of Civil Procedure of all issues in this action so triable.

Dated: January 29, 2026

**SGT AUTO TRANSPORT CORP.**

By: ___/s/ Shari L. Friedman____
Shari L. Friedman (6193095)
Robert L. Reeb (6198415)
Marwedel, Minichello & Reeb, P.C.
303 West Madison Street
Ste. 1100
Chicago, IL 60606
(312) 902-1600
sfriedman@mmr-law.com
rreeb@mmr-law.com

## VERIFICATION

I, Stefano Tanfulla, declare as follows:

I am the President and Owner of SGT AUTO TRANSPORT CORP. and have read the foregoing Verified Complaint for Injunctive Relief and Damages. If called on to testify, I would competently testify as to the matters stated in the Verified Complaint for Injunctive Relief and Damages. I verify under penalty of perjury under the laws of the United States of America that the factual statements in the Verified Complaint for Injunctive Relief and Damages concerning SGT AUTO TRANSPORT CORP., SGT's actions and the harms SGT has suffered and/or will suffer are true and correct to the best of my information and knowledge. 28 U.S.C. § 1746.

Dated: January  29 , 2026

_Stefano Tanfulla_
Stefano Tanfulla