**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MONTWAY LLC d/b/a MONTWAY AUTO TRANSPORT, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 25 C 13100 |
| NEXUS AT LLC d/b/a NEXUS AUTO TRANSPORT and GOKHAN ARKIN, | ) ) ) ) ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| SGT AUTO TRANSPORT CORP. | ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 26 C 1056 |
| NEXUS AT LLC d/b/a NEXUS AUTO TRANSPORT, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

In separate lawsuits, Montway LLC and SGT Auto Transport Corporation have sued Nexus AT LLC[1] for violation of the Lanham Act and various state consumer protection laws. Nexus and Arkin have moved to dismiss all of the plaintiffs' claims. For the reasons stated below, the Court grants the motions to dismiss with respect to the plaintiffs' California Unfair Competition Law claims and otherwise denies the motions.

---

[1] Montway has also sued Nexus's CEO, Gokhan "George" Arkin.

**Background**

At the pleading stage, the Court must "accept all well-pleaded facts in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299 (7th Cir. 2018).

Montway, SGT, and Nexus are automative transportation brokers in the United States. The companies provide automotive transportation services to a broad range of clients including individual car owners, auto dealerships, financial institutions (for vehicle repossession), rental car companies, original equipment manufacturers, and others. Montway and SGT have registered various trademarks related to their business, including "MONTWAY AUTO TRANSPORT" and "SGT AUTO TRANSPORT."

Montway and SGT spend hundreds of thousands of dollars each year on online advertising, search-engine optimization (SEO), and affiliate marketing to ensure they continue to reach prospective clients. SEO is the practice of using various techniques to improve a website's rank on search engines like Google. SEO improves a website's organic web-traffic by ensuring that the website is listed on the first page of results when a user searches for information relevant to that website. For example, "Montway.com" is one of the first websites that Google returns when a user searches for "Montway," "Montway Auto Transport," "best car shipping company," or "how to ship a car to another state."

One of the SEO considerations is a website's "trustworthiness." Google measures website "trustworthiness" by measuring "backlinks." Backlinks are when links for a given website—"Montway.com" and "sgtautotransport.com"—appear on other websites. A website with high quality backlinks is more likely to have a high SEO

ranking. A website's SEO ranking is vital to website traffic and brand awareness.

According to Montway and SGT, Nexus's CEO, Gokhan "George" Arkin, decided he wanted to launch a toxic-backlink campaign to damage the companies. Toxic backlinking is the process of using backlinks to harm a website's SEO ranking. The presence of low-quality backlinks can cause search-engine algorithms to rank an otherwise trustworthy website lower than if the website were missing those backlinks. Nexus's alleged toxic backlink campaign involved adding links to "Montway.com," "sgtautotransport.com," and other Montway and SGT subdomains on untrustworthy websites. Another toxic-backlinking technique involves using "anchor text" to link to a website. "Anchor text" is the clickable text that appears on screen when text is hyperlinked. Using misleading anchor text as part of a toxic-backlink campaign confuses search-engine algorithms by associating the target webpage with different, sometimes malicious, content.

If Google detects link spam, it may lower a website's ranking or delist the website from Google entirely. A toxic-backlink campaign can leverage Google's link-spam policy by creating many backlinks that have anchor text associated with frequently used search terms. One common approach for creating spam links is to use keywords associated with purchasing decisions (e.g., "car insurance quote"). Keywords related to online gambling and "adult content" are also frequently used as anchor text in a toxic-backlink attack.

According to SGT, some of the toxic backlinks Nexus created use "sgtautotransport.com" as anchor text on websites like pokerstarcasinolives.com. Other toxic backlinks use anchor text such as "online casino," "hiding illegal funds," "CBD

products online," "illegal border crossing," "illegal drug distribution," "corrupt influence," "drug paraphernalia" and "heroin is a drug" that lead to Montway or SGT's websites. This means that an individual who clicks on the link believing, for instance, he or she is about to purchase CBD products is redirected to Montway or SGT's website. According to Montway and SGT, this creates the false impression that they are connected to and/or affiliated with such products or services.

Montway filed its lawsuit in October 2025. It filed an amended complaint in December 2025. The amended complaint asserts six claims against Nexus: (1) false advertising under the Lanham Act, 15 U.S.C. § 1125(a); (2) violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510; (3) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505; (4) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; (5) trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1); (6) trademark dilution by tarnishment under the Lanham Act, 15 U.S.C. § 1125(c). Montway seeks injunctive relief and asserts claims for individual liability against Nexus's CEO, Gokhan "George" Arkin, under the Illinois LLC Act, 805 ILCS 180/10-10. SGT filed a substantially similar lawsuit in January 2026 alleging the same claims, except for a claim of individual liability against Arkin, based on the same alleged conduct directed at SGT.

Nexus and Arkin have moved to dismiss all of the plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6).

## Discussion

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "the plaintiff must allege 'enough facts to state a claim to relief that is plausible on its

face.'" *NewSpin*, 910 F.3d at 299 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At the pleading stage, the Court must "accept all well-pleaded facts in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Id.* In ruling on a Rule 12(b)(6) motion to dismiss, a court is limited to assessing the allegations in the complaint, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information subject to proper judicial notice. *Wertymer v. Walmart, Inc.*, 142 F.4th 491, 498 (7th Cir. 2025).

## A.     Federal Rule of Civil Procedure 9(b)

Nexus argues that the plaintiffs' Lanham Act deceptive advertising and state law consumer protection claims must be pled with particularity under Federal Rule of Civil Procedure 9(b). A claim "alleging fraud" requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). In other words, the plaintiff must describe the "who, what, when, where, and how of the fraud." *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011); *see also Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014). The particularity standard requires plaintiffs to plead fraud with precision and "some measure of substantiation." *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (quoting 2 James W. Moore et al., Moore's Federal Practice § 9.03[1][b], at 9-22 (3d ed. 2015)). Still, "the precise level of particularity required under Rule 9(b) depends upon the facts of the case." *Camasta*, 761 F.3d at 737.

Claims premised on unfair conduct are different. Rule 9(b) does not apply, and a plaintiff need only meet the less-stringent pleading standard under Rule 8(a). *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 446 (7th

Cir. 2011). That said, if a plaintiff premises a claim of unfair conduct on a deceptive act, it may "sound[] in fraud" such that Rule 9(b)'s pleading requirements apply. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).

For the reasons discussed below, the plaintiffs have satisfied Rule 9(b) on their Lanham Act deceptive advertising claims and claims under the Illinois consumer protection statutes, assuming for purposes of discussion that Rule 9(b) applies to those claims. The plaintiffs have pleaded the who—Nexus / Nexus's CEO; the what—a toxic backlink campaign, including the details of that campaign; the when—from November 2024 through at least November 2025; the where—various websites; and the how— deploying toxic backlinks to connect the plaintiffs' services with unsavory goods and services. With this foundation, the Court further addresses Nexus's challenges to each claim below.

## B.  Lanham Act

### 1.  Deceptive advertising

To plead a deceptive-advertising claim under the Lanham Act, a plaintiff must allege that: "(1) the defendant made a material false statement of fact in a commercial advertisement; (2) the false statement actually deceived or had the tendency to deceive a substantial segment of its audience; and (3) the plaintiff has been or is likely to be injured as a result of the false statement." *Eli Lilly and Company v. Arla Foods, Inc.*, 893 F.3d 375, 382 (7th Cir. 2018).

Nexus first argues that Montway and SGT do not allege it made any false statements. In response, Montway and SGT point to their allegations that Nexus created toxic backlinks that used "anchor text" to link to another website. According to

6

the plaintiffs, anchor text "is the clickable text that appears on screen when text is hyperlinked."  Montway Am. Compl. ¶ 28; SGT Compl. ¶ 31.

The plaintiffs allege that this anchor text is literally false.  According to SGT, some anchor text states "sgtautotransport.com" but connects to a website like "pokerstarcasinolives.com."  SGT Compl. ¶ 34.  And anchor text such as "online casino," "hiding illegal funds," "CBD products online," and other similar statements lead to SGT's website.  *Id.*  Montway similarly alleges that some anchor text states "Montway.com" but connects to unsavory websites and that other toxic backlinks links use anchor text such as "buy steroids online" and "payday loan services" to lead to Montway's website.  Montway Am. Compl. ¶ 32.  In sum, Montway and SGT allege that Nexus created anchor text stating that a link will lead to a website offering certain goods or services—car transport services or a variety of unsavory goods and services—but that the link actually takes the consumer to a different destination.  This is sufficient to constitute a false statement under the Lanham Act.

Nexus also contends that a Lanham Act false-advertising claim requires a showing of deception about the product itself.  That is not so when the plaintiff alleges that the statement is literally false.  *Eli Lilly*, 893 F.3d at 382 ("A literally false statement will necessarily deceive consumers, so extrinsic evidence of actual consumer confusion is not required.").  Because Montway and SGT allege that the anchor text is literally false, their allegations are also sufficient to plead deception.

Even if Montway and SGT were required to independently plead deception, Nexus's argument for dismissal fails.  Montway and SGT allege that the toxic backlinks and related anchor text created the impression that their services were affiliated with the

7

spam websites as well as the unsavory products and services promoted on those websites. According to the complaints, the toxic backlinks and anchor text thus mislead consumers about the quality and type of services that Montway and SGT offer.

Nexus next contends that the toxic backlinks are not commercial advertising or promotion. The Lanham Act does not cover all commercial speech. *First Health Grp. Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 803 (7th Cir. 2001). A plaintiff must allege that the defendant made a false or misleading statement that in "commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities[.]" 15 U.S.C. § 1125(a)(1)(B).

Some circuits have developed a four-part test to determine whether conduct falls into the category of "commercial advertising or promotion" for purposes of liability under the Lanham Act. *See Podiatrist Ass'n, Inc. v. La Cruz Azul De Puerto Rico, Inc.*, 332 F.3d 6, 19 (1st Cir. 2003) (collecting cases). The Seventh Circuit has rejected this approach. *First Health*, 269 F.3d at 803. In doing so, the court stated it had "serious doubts about the wisdom of displacing the statutory text in favor of a judicial rewrite with no roots in the language Congress enacted." *Id*. Still, the court recognized that treating the Lanham Act as if it covered all commercial speech that the Constitution allows the federal government to regulate under the First Amendment is "equally implausible[.]" *Id.* The court explained that the language and structure of the Lanham Act suggest that the Act creates a line between varieties of commercial speech; only statements made in speech involving "commercial advertising or promotion" can provide a basis for liability. *Id.*

The Seventh Circuit has also noted that "methods of advertising and promotion are changing with innovations in communications media; they are no longer, if they ever were, confined to newspaper and magazine ads, radio and television commercials, and billboards." *Neuros Co. v. KTurbo, Inc.*, 698 F.3d 514 (7th Cir. 2012). Based on the Seventh Circuit's emphasis on the statutory language rather than a judicially developed test, the Court will not limit the scope of the Lanham Act to only traditional commercial advertising or promotion methods.

Based on plaintiffs' allegations, Nexus's alleged toxic backlink campaign involves an innovation in communications media that is covered by the Lanham Act. Montway and SGT allege that they have made significant investments in online advertising, search engine optimization, and affiliate marketing to ensure they continue to reach prospective customers. Nexus's alleged toxic backlinking of the plaintiffs' websites connects those websites to untrustworthy websites, hindering their ability to reach prospective customers. Montway and SGT allege that these toxic backlinks include false anchor text that creates the false impression that Montway and SGT are affiliated with these untrustworthy websites.

The Court also finds persuasive the plaintiffs' argument that Nexus's alleged toxic backlinking campaigns are comparable to negative advertising. The Seventh Circuit has recognized that negative ads "are a conventional though frequently disparaged form of commercial advertising." *Neuros*, 698 F.3d at 522. The alleged toxic backlinks serve the same goals as negative advertisements: to denigrate a competitor. The Court thus concludes that Montway and SGT have sufficiently alleged that the toxic backlinks and related anchor text are a method of commercial advertising and promotion as required

9

to state a Lanham Act deceptive advertising claim.

Finally, Nexus briefly argues that Montway and SGT do not allege materiality or injury. These arguments lack merit. Montway and SGT allege that the toxic backlinks and included anchor text created the impression that their services are affiliated with untrustworthy websites and/or unsavory goods and services. According to Montway and SGT, this ultimately led to fewer consumers reaching their websites. Thus Montway and SGT sufficiently allege the toxic backlinks, and included anchor text, were material and injured them.

For these reasons, the Court concludes that Montway and SGT have sufficiently stated Lanham Act deceptive advertising claims.

### 2. Trademark infringement

To plead a trademark infringement claim under the Lanham Act, a plaintiff must plead that: "(1) her mark is protectable[;] and (2) the defendant's use of the mark is likely to cause confusion among consumers." *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001).

Nexus primarily challenges these claims based on its contention that the plaintiffs do not adequately allege likelihood of confusion.[2] "[W]hether consumers are likely to be confused about the origin of a company's products is a question of fact" governed by several factors: "(1) similarity between the marks in appearance and suggestion; (2)

---

[2] Arkin also argues that Montway does not allege that the toxic backlinks are similar to its trademarks or that Arkin is using, or has directed Nexus to use, the trademarks in any manner. This argument lacks merit. Montway alleges that some toxic backlinks created by Nexus at Arkin's direction used "Montway"—Montway's registered mark—as anchor text. Montway Am. Compl. ¶ 32. Montway sufficiently alleges that Nexus improperly used its trademarks.

10

similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) whether actual confusion exists; and (7) whether the defendant intended to 'palm off' his product as that of the plaintiff." *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 677–78 (7th Cir. 2001).

Although "[n]o single factor is dispositive and courts may assign varying weights to each of the factors depending on the facts presented," "[i]n many cases, . . . three of the factors are likely to be particularly important: the similarity of the marks, the defendant's intent, and actual confusion." *Id.* at 678.  Even then, "there is no hard and fast requirement that all three of these factors must weigh in the plaintiff's favor in order to find that a likelihood of confusion exists," as "the district court must give appropriate weight to the factors that are particularly important based on the facts of each case." *Id.* at 686–87 (internal quotation marks omitted).

Nexus first argues that Montway and SGT do not allege that customers seeking high quality transportation services would be confused or deceived about the origin of the services based on spam links.  Nexus also contends that the alleged toxic backlinks are not similar to the plaintiffs' marks and cannot create confusion.  Finally, Nexus argues that Montway and SGT allege no actual confusion or intent to palm off its own services as the plaintiffs'.

Because the "likelihood of confusion test is a fact-intensive analysis," it "ordinarily does not lend itself to a motion to dismiss." *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 412 (S.D.N.Y. 2006); *see also Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 769 (N.D. Ill. 2008) (noting that the likelihood of

confusion test "is a fact-specific inquiry best left for decision after discovery"). "[T]he court's role at the motion to dismiss stage is limited to assessing whether [the plaintiff] has pleaded facts that plausibly could result in a successful outcome on the likelihood of confusion element of its claim." *Slep-Tone Ent. Corp. v. Coyne*, 41 F. Supp. 3d 707, 715 (N.D. Ill. 2014) (Feinerman, J.).

Montway and SGT allege that the toxic backlinks that Nexus created, and the anchor text within them, use their marks "Montway" and "sgtautotransport." These allegations could support a finding of a likelihood of confusion based on similarities of the marks. Montway also alleges that the toxic backlinks "creat[e] the impression that Montway's services are affiliated with untrustworthy, spam-filled websites and/or the service advertised therein, rather than with the trustworthy services normally associated with the Montway Marks." Montway Am. Compl. ¶ 34. SGT alleges: "The toxic backlinks have caused consumer confusion by creating the impression that SGT's services are affiliated with untrustworthy, spam-filled websites and/or the service advertised therein, rather than with the trustworthy services normally associated with the SGT Mark." SGT Compl. ¶ 36. These allegations are sufficient to plausibly allege actual confusion.

Nexus contends that reasonable customers generally exercise great care when making any purchase related to their vehicle, including auto transport, and thus the plaintiffs' customers are sophisticated and exercise a high degree of care. Although this argument may be developed through discovery and be relevant at a later stage of the proceedings, it does not provide a basis for dismissal at the pleading stage.

Finally, Nexus argues that Montway and SGT fail to allege that Nexus attempted

12

to "palm off" its own services as theirs. But "'proof of intent to deceive or to confuse is not necessary to prove trademark infringement,' and a weak or nonexistent showing of this factor does not foreclose finding a likelihood of confusion." *Slep-Tone*, 41 F. Supp. 3d at 716 (quoting *CAE*, 267 F.3d at 686). In sum, the Court concludes that Montway and SGT allege facts that could support a finding of likelihood of confusion.

For these reasons, the Court concludes that Montway and SGT have sufficiently stated trademark infringement claims.

### 3. Dilution by tarnishment

To state a claim for trademark dilution under the Lanham Act, a plaintiff must allege: (1) its mark is famous; (2) the defendant adopted its mark after the plaintiff's mark became famous; (3) the defendant's use of its mark causes dilution of the plaintiff's famous mark; and (4) the defendant's use of its mark is commercial and in commerce. *See Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 466 (7th Cir. 2000); 15 U.S.C. § 1125(c). A mark is "famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A).

Nexus argues that the plaintiffs' claims of dilution by tarnishment fail because their marks are not famous. Montway alleges that its mark "has been in continuous use since at least July 2007" and, based on that use, the mark "has acquired consumer recognition, positive reputation, and extensive goodwill with consumers." Montway Am. Compl. ¶ 14. SGT alleges that its mark has been in use since 2014 and, based on that use, SGT's mark "has acquired consumer recognition, positive reputation, and extensive goodwill with consumers." SGT Compl. ¶ 17. Montway and SGT also allege

13

that they have spent hundreds of thousands of dollars each year to reach prospective consumers. The Court concludes that Montway and SGT have sufficiently alleged that their marks are famous.

Nexus also argues that the plaintiffs have failed to allege that the backlinks use their marks in a way that would dilute the marks. But Montway and SGT allege that Nexus connected their marks to a number of unsavory websites, including websites that promote sexual and illegal activity. This is sufficient to plausibly allege that Nexus's use of the marks tarnishes them.

For these reasons, the Court concludes that Montway and SGT have stated viable dilution by tarnishment claims.

## C. Illinois consumer protection statutes

The Illinois Uniform Deceptive Trade Practices Act sets forth twelve bases for liability relating to unfair competition. 815 ILCS 510/2(a). The Illinois Consumer Fraud and Deceptive Business Practices Act bans "unfair or deceptive acts or practices . . . with intent that others rely upon the concealment, suppression, or omission of such material fact . . . in the conduct of any trade or commerce[.]" 815 ILCS 505/2. "The Consumer Fraud Act is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*, 192 F. Supp. 3d 943, 954 (N.D. Ill. 2016) (cleaned up).

Nexus recognizes that the plaintiffs' claims under the Illinois consumer protection statutes rise and fall with the Lanham Act deceptive advertising claims. *AAVN, Inc. v. WestPoint Home, Inc.*, No. 17 C 8329, 2019 WL 1168102, at *4 (N.D. Ill. Mar. 13, 2019)

14

(Coleman, J.). Because the plaintiffs have stated viable Lanham Act claims, their claims under the Illinois Uniform Deceptive Trade Practices Act and Illinois Consumer Fraud and Deceptive Business Practices Act likewise are sufficient to avoid dismissal.

**D.    California Unfair Competition Law**

Nexus argues that the plaintiffs' claims under the California Unfair Competition Law (UCL) "must be dismissed as it does not apply to actions which have taken place outside of California." Defs.' Mots. at 9, 13. Montway and SGT do not dispute that the UCL does not apply extraterritorially, nor could they. *See Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191 (2011). Instead, Montway and SGT contend that the statute does not need to be applied extraterritorially in this case because they suffered an injury in California. The only such injury that Montway or SGT assert is the impact of the toxic backlinks on Google's algorithm. Because Google is headquartered in California, Montway and SGT argue they suffered this injury in California.

Any impact on the plaintiffs' search rankings was not suffered at Google's headquarters in California. Montway and SGT only arguably suffered an injury where consumers searched for the plaintiffs' services or where a consumer attempted to access plaintiffs' website but were instead directed to a spam website. Although Montway and SGT allege that they have a customer base in California that was impacted, they have not alleged any specific instance where a potential customer in California was impacted by Nexus's actions.

For these reasons, the Court grants Nexus's motions to dismiss the plaintiffs' California UCL claims (count four).

**E.      Individual liability (Montway only)**

Nexus's CEO, Gokhan "George" Arkin, argues that he must be dismissed from the case because he is not personally liable for a debt, obligation, or liability of the LLC solely by reason of being or acting as a manager.  He argues that Montway must allege facts sufficient to pierce the corporate veil for him to be liable.

Under the Illinois Limited Liability Act, "a member or manager of a limited liability company may be liable under law other than this Act for his, her, or its own wrongful acts or omissions, even when acting or purporting to act on behalf of a limited liability company."  805 ILCS 180/10-10(a-5).

Arkin argues that Montway "attempts to lay responsibility and therefore liability for any alleged damages it has suffered at [his] feet solely because he is the CEO and a member of Nexus."  Defs.' Reply, 25 C 13100, dkt. no. 101, at 14.  This is incorrect. Montway alleges that Arkin "decided he wanted to launch a toxic-backlink campaign to damage Montway."  Montway Am. Compl. ¶ 26.  Montway also alleges that a former Nexus employee has stated that Arkin specifically asked another individual to "launch a toxic backlink campaign against Montway to damage its website."  *Id.*, ¶ 39.  Thus Montway alleges that Arkin is liable based on his own wrongful acts or omissions, even if he was acting or purporting to act on Nexus's behalf

For this reason, Montway has stated a viable claim against Arkin for individual liability on its three claims under the Lanham Act and its claims under the Illinois Uniform Deceptive Trade Practices Act and the Illinois Consumer Fraud and Deceptive Business Practices Act.

16

**F.      Injunctive relief**

Nexus also argues that Montway and SGT cannot demonstrate a likelihood of success on the merits of their claims, and their allegations fail to state a claim for relief, so they are not entitled to injunctive relief.  The question before the Court at this point is whether Montway and SGT have stated viable claims, not whether they are entitled to injunctive relief.  Thus Nexus's argument regarding injunctive relief is overruled as premature.

**Conclusion**

For the reasons stated above, the Court grants the defendants' motions to dismiss [25 C 13100, dkt. nos. 70, 90, and 26 C 1056, dkt. no. 17] only with respect to the plaintiffs' California Unfair Competition Law claims and denies the remainder of the motions.  The cases remain set for a telephonic status hearing on June 26, 2026 at 8:50 AM, using call-in number 650-479-3207, access code 2305-915-8729.

_____

MATTHEW F. KENNELLY
United States District Judge

Date:  June 2, 2026